UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| LOUIS JONES ENTERPRISES, INC., | ) | Bankruptcy No. 10 B 11375 |
| | ) | |
| Debtor. | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Louis Jones Enterprises, Inc. as Debtor in this Chapter 11 bankruptcy case, moved for valuation of the security asserted for Claim Number 15, the claim of SteelFab, Inc. ("SteelFab"), pursuant to Fed. R. Bankr. P. 3012, and SteelFab objected. This court has core jurisdiction over the issues presented under 28 U.S.C. § 157(b)(2)(K). For reasons set forth herein, SteelFab's security is valued at zero and SteelFab's claim will be treated in this bankruptcy case as a general unsecured claim.

## FINDINGS OF UNDISPUTED FACTS

The following facts are undisputed and are taken from proposed findings of fact and conclusions of law submitted by the parties and which the parties stipulated to, having waived rights to submit further evidence.

The Debtor provides construction management and architecture and engineering consulting services in and around the Chicago metropolitan area. The Debtor acted as the general contractor for Jones Lang LaSalle on a project located in Crestwood, Illinois owned by Bank of America (the "Crestwood Project"). SteelFab and the Debtor entered into a contract whereby SteelFab would supply labor and materials for the structural steel for the Crestwood Project.

Pursuant to the contract, SteelFab was required to execute and deliver waivers of mechanics' liens to the Debtor before the Debtor issued payment to SteelFab.

The Debtor, in its capacity as general contractor on the Crestwood Project, submitted regular invoices, applications and certificates for payment, and lien waivers in order to receive payments from Jones Lang LaSalle. The general contractor's affidavit submitted by the Debtor to Jones LaSalle during each applicable period showed the total amount necessary to pay all subcontractors for that period, as well as how much of the total was due to each individual subcontractor, supplier, materialman, or laborer.

In accordance with requirements of its contract, SteelFab delivered invoices and lien waivers throughout the construction of the Crestwood Project and the Debtor tendered checks to SteelFab to satisfy those invoices. Only SteelFab's last invoice and final lien waiver, dated February 27, 2009, seeking payment of $24,856.00 went unpaid. On April 10, 2009, the Debtor submitted an invoice for total payment of $329,749.46 (the "April Invoice"). Jones Lang LaSalle paid the April Invoice on April 22, 2009. On April 29, 2009, the Debtor submitted an Unconditional Waiver and Release on Final Payment attesting that it had been paid in full $1,828,896.26 on the Crestwood Project. The Debtor as general contractor received pursuant to the April Invoice $24,746.00 for work performed by SteelFab, but Debtor did not pay SteelFab the final payment for work that it performed.

The money paid by Jones Lang LaSalle to Debtor for benefit of SteelFab and other subcontractors for work performed on the Crestwood Project was deposited in the Debtor's Citibank account ending with the number 4103 (the "4103 Account"). As of July 3, 2009, there was no money remaining in the 4103 Account attributable to the Crestwood Project. When this

2

bankruptcy case was filed on March 16, 2010 (the "Petition Date"), no money remained in the 4103 Account at all. The Debtor had by then paid others the money it had received to pay SteelFab. On June 25, 2009, the Debtor opened a second Citibank account ending with the number 4696 (the "4969 Account"). As of the Petition Date, no money remained in the 4969 Account. The Debtor also maintained a deposit account at American Chartered Bank, account ending with the number 4042 prior to the Petition Date, but as of the Petition Date no money remained in that account.

The United States filed notices of Federal Tax liens on June 8, 2009, August 14, 2009, and February 26, 2010 (the "Tax Liens"), with the Illinois Secretary of State asserting a lien on all property and rights to property of the Debtor securing an obligation with unpaid balances of $148,826.00, $510,795.00, and $298,816.00, respectively.

On March 16, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On June 14, 2010, SteelFab filed its proof of claim in the Debtor's bankruptcy case asserting a secured claim of $24,856.00 (Claim No. 15). On August 13, 2010, the Debtor filed this motion for valuation asserting that the value of SteelFab's collateral is zero and that it should therefore be treated as a general unsecured claim.

Additional facts set forth in the Conclusions of Law will stand as additional findings of fact.

## CONCLUSIONS OF LAW

Under Illinois law, a trust may be imposed on funds received as a result of execution of a waiver of mechanics lien. Specifically, the Illinois Mechanics Lien Act (the "Act") provides that,

> Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services, material, fixtures, apparatus or machinery . . . in exchange for payment or the promise of payment, shall hold in trust the sums received by such person as a result of the waiver of mechanics lien, as trustee for the person who furnished the labor, services, material, fixtures, apparatus or machinery . . . or the person otherwise entitled to payment in exchange for such waiver.

770 Ill. Comp. Stat. 60/21.02(a) (2008). Money paid by an owner remains subject to the statutory trust as it is paid through the contractor and subcontractors so as to protect each tier until all are paid. *In re Raymond Prof'l Grp.*, 408 B.R. 711, 728 (Bankr. N.D. Ill. 2009), *amended and superseded in part*, 410 B.R. 813 (Bankr. N.D. Ill. 2009), *aff'd*, 09 C 6037, 10 C 5325, 2011 WL 528551 (N.D. Ill. Feb. 8, 2011).

Pursuant to the construction contract involved here, SteelFab provided Debtor with a lien waiver on February 27, 2009. On April 29, 2009, a payment was deposited into the Debtor's 4103 Account, $24,746.00 of which was attributable to SteelFab's February 27, 2009 lien waiver. Thus, under the Act, the Debtor was required to hold the money it received as a result of SteelFab's lien waiver in trust until it paid that amount to its subcontractor SteelFab. However, that money was spent elsewhere, SteelFab never received payment, no funds remained in the 4103 Account pre-bankruptcy that were attributable to the Crestwood Project, and no funds at all were in that account when the bankruptcy case was filed.

The Debtor argues that the value of SteelFab's collateral is zero because there were no funds traceable to the Crestwood Project in the Debtor's 4103 Account as of July 3, 2009, that the trust was therefore exhausted and there was then and is now nothing securing SteelFab's claim. The Debtor further argues that any money received after the trust was exhausted was

subject to Tax Liens filed by the United States and, therefore, under the "lowest intermediate balance rule" any funds received after the trust was exhausted were subject to the Tax Liens.

SteelFab argues that money received by the Debtor post-bankruptcy should be used to secure the debt owed to SteelFab in order to comply with the Debtor's trust obligations. SteelFab cited no relevant law in its Proposed Findings of Fact and Conclusions of Law to support its contention that the Debtor's post-bankruptcy income not traceable to the Crestwood Project may be subject to the trust created by the Act. However, SteelFab argued in open court that the unpublished opinion in *Raymond Professional Group, Inc. v. William A. Pope Co.*, 09 C 6037, 10 C 5325, 2011 WL 528551 (N.D. Ill. Feb. 8, 2011), by analogy, supports such a ruling. SteelFab argues that the opinion in *Raymond* allowed the beneficiary of a trust under the Act to receive other funds not traceable to the project funds to satisfy the underfunded trust. It contends that under the reasoning in *Raymond*, a statutory trust such as that under the Act does not terminate and is not reduced despite the unavailability of traceable funds in the account where trust funds were deposited.

In *Raymond*, a contractor and subcontractor entered into an agreement whereby revenues paid to the contractor for the project were placed in a commercial checking account which required the signatures of a representative of both the contractor and subcontractor to disburse funds or make changes to the account. *Id.* at *1. Disputes arose between them and the contractor stopped paying the subcontractor for the work. *Id.* The contractor later requested that the subcontractor provide a final lien waiver in order to facilitate the final payment from the owner; the subcontractor complied. *Id.* at *2. The final lien waiver acknowledged that the subcontractor had received approximately $3 million less than the contract value, but after a further demand for

payment the contractor refused to pay and arbitration proceedings began. *Id.* The arbitration panel found that the subcontractor was owed an amount exceeding moneys in the account, and that any remaining balance was to be paid by the contractor. *Id.*

Thereafter, the contractor filed a Chapter 11 bankruptcy case and the contractor brought an adversary proceeding to ratify the arbitration. *Id.* The district court affirmed the decision of the bankruptcy judge that all funds in the account were held in trust for the subcontractor's benefit. *Id.* at *5.

There are significant differences between the facts in *Raymond* and the situation here. In *Raymond*, the total value of the trust extended only to funds that were deposited pre-bankruptcy and the trust existed only in funds that were located in the same account as the project funds. No trust was imposed on any funds other than those located in the subject account. However, here SteelFab is requesting that a trust be imposed on the Debtor's post-bankruptcy income which has been deposited in a completely separate account and has no relation to the Crestwood Project where money originally due to it were deposited.

Here there are no remaining funds to which the statutory trust could attach because the Debtor admittedly spent all the funds from the Crestwood Project, whereas in *Raymond*, some project funds still existed in the account in issue. *Raymond* does not support SteelFab's contention that the statutory trust extends to the Debtor's post-bankruptcy income after all the project funds have been spent. SteelFab cites to no other precedent which would support its position.

Likewise, the Act offers no support for SteelFab's argument. Within the Act is a limited remedy, providing that,

6

> any owner, contractor, subcontractor, or material supplier who knowingly retains or used the moneys held in trust . . . for any purpose other than to pay those for whom the moneys are held in trust, shall be liable to any person who successfully enforces his or her rights under this Section for all damages sustained by that person.

770 Ill. Comp. Stat. 60/21.02(c). That imposes liability on the Debtor here for payment to others of the money due to SteelFab. But, SteelFab has pointed to nothing in the Act or relevant precedent which grants any other applicable remedy. *See Safeco Ins. Co. v. Wheaton Bank and Trust Co.*, 07 C 2397, 2008 WL 216396, at *5 (N.D. Ill. Jan. 24, 2008) ("The fact that the legislature intended to protect subcontractors does not require the conclusion that every imaginable protection be extended, nor does that intention provide a basis for ignoring the plain language of the Act.")

It must be concluded here that the value of SteelFab's security is zero because no funds exist which serve as collateral. Therefore, SteelFab's claim will be treated as a general unsecured claim. *See* 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent of the value of such creditor's interest . . . is less than the amount of such allowed claim.")

The Debtor's argument with respect to the lowest intermediate balance rule and the Tax Liens need not be addressed. The lowest intermediate balance rule presumes

> that proceeds remain in the account as long as the account is equal to or greater than the amount of the proceeds deposited. The proceeds are "identified" by presuming that they remain in the account even if other funds are paid out of the account . . . . Under the rule, however, if the balance of the account dips below the amount of deposited proceeds, [the] security interest in identifiable

> proceeds abates accordingly. This lower balance is not increased if, later, other funds . . . are deposited in the account . . . unless the deposits are made in restitution.

*C.O. Funk & Sons, Inc. v. Sullivan Equip., Inc.*, 431 N.E.2d 370, 372 (Ill. 1982) (citation omitted). Here, there is no issue of commingled funds. All funds attributable to the Crestwood Project were exhausted as of July 3, 2009. If any other funds were commingled in the 4103 Account, they have all been spent and no funds relating to the Crestwood Project have been alleged to exist in that or any other account. Therefore, the Crestwood Project funds could not have been commingled with any other later deposited funds to which the Tax Liens attached.

Finally, it must be noted that while this litigation was brought on by motion, it also could have been presented by Adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2). However, the parties consented to proceed by motion and they waived any need for Adversary proceeding.

## CONCLUSION

For the foregoing reasons, an order allowing the Debtor's motion for valuation will be separately entered in favor of the Debtor. SteelFab's security will be valued at zero and will therefore be treated in this bankruptcy case as an unsecured claim.

Dated this 7 day of July, 2011.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

8